# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| ANDREW AARON LLOYD and RUSSELL A. SCHORT, | ) Case No. 6:21-mj-00001 |
| | ) |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT
### BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 2020 in the county of Linn in the _____ District of Oregon, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 1957 | Money Laundering |

This criminal complaint is based on these facts:

The attached affidavit of Timothy W. Suttles, which is incoporated herein

☐ Continued on the attached sheet.

/s/ Timothy W. Suttles, Per Rule 4.1
*Complainant's signature*

Timothy W. Suttles, Special Agent FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 12:14pm a.m./p.m.

Date: January 5, 2021

*Judge's signature*

City and state: Eugene, Oregon      Mustafa T. Kasubhai, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:        AFFIDAVIT OF TIMOTHY W. SUTTLES

**Affidavit in Support of a Criminal Complaint, Arrest Warrant, and Seizure Warrant**

I, Timothy W. Suttles, being duly sworn, do hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since January 2001. I am assigned to the Eugene, Oregon Resident Agency of the FBI. My responsibilities include the investigation of federal criminal offenses, to include 18 U.S.C. § 1343, Wire Fraud, 18 U.S.C. § 1344, Bank Fraud, and 18 U.S.C. § 1957, Money Laundering.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for ANDREW AARON LLOYD (LLOYD) and RUSSELL A. SCHORT (SCHORT) for a violation of 18 U.S.C. § 1343, Wire Fraud, 18 U.S.C. § 1344, Bank Fraud, and 18 U.S.C. § 1957, Money Laundering.

3. As set forth below, there is probable cause to believe, and I do believe, that LLOYD and SCHORT committed the above-described offenses.

4. This affidavit is also being submitted in support of an Application for a Seizure Warrant for the following assets controlled by LLOYD:

    a. All funds and securities contained in Charles Schwab account number ending in 4724 in the name of ANDREW LLOYD and NANCY ELLEN LLOYD.

5. Based on information contained in this affidavit, there is probable cause to believe, and I do believe, the above assets are property constituting or derived from proceeds obtained directly or indirectly as a result of violations of 18 U.S.C. § 1343, Wire Fraud, and 18 U.S.C. § 1344, Bank Fraud, and is property involved in a violation of 18 U.S.C. § 1957 or

traceable to such property. Furthermore, there is probable cause that the property is subject to seizure pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f) and subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) & (C), 982(a)(1), 984, and 28 U.S.C. § 2461(c).

6. This affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## APPLICABLE LAW

7. 18 U.S.C. § 1343, Wire Fraud, provides, in part: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

8. 18 U.S.C. § 1344, Bank Fraud, provides, in part, that whoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses,

representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

9. 18 U.S.C. § 1957, Money Laundering, provides that whoever knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 derived from specific unlawful activity shall be punished with a fine, imprisonment, or both.

## STATEMENT OF PROBABLE CAUSE

### Summary of the Investigation

10. As set forth below, I have probable cause to believe that ANDREW AARON LLOYD and RUSSELL A. SCHORT committed wire fraud, bank fraud, and money laundering. LLOYD and SCHORT applied for and obtained Economic Injury Disaster Loans (EIDLs) and/or Paycheck Protection Program (PPP) Loans from the U.S. Government using false payroll information and by providing materially false information on their loan applications. LLOYD and SCHORT then caused the proceeds of these loans to be transmitted by interstate wires, in part to fund LLOYD'S personal online securities trading. Proceeds of the fraud, as of January 4, 2021, have been used to purchase securities worth more than $11 million.

**Background of Economic Injury Disaster Loans and the Paycheck Protection Program**

11. The Economic Injury Disaster Loan ("EIDL") program is a Small Business Administration (SBA) program that provides low-interest financing to small businesses, renters, and homeowners affected by declared disasters.

12. On March 27, 2020, President Trump signed the Coronavirus Aid, Relief, and Economic Security (CARES) Act into law. Pub. L. No. 116-136, 134 Stat. 281 (2020). That

statute, along with the Coronavirus Preparedness and Response Supplemental Appropriations Act, authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance is determined by the number of employees the applicant certifies having. The advances do not have to be repaid.

13.   In order to obtain an EIDL and advance, a qualifying business must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant must also certify that all the information in the application is true and correct to the best of the applicant's knowledge.

14.   The CARES Act also created the Paycheck Protection Program (PPP), which authorized the SBA to guarantee loans of up to $10,000,000 to qualifying employers without collateral or personal guarantees from the borrowers. The Act required lenders making loans under the PPP to defer all repayment obligations for not less than six months on such loans and required borrowers to certify, among other things, that the borrowed "funds [would] be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments." CARES Act § 1102, 134 Stat. at 286-93.

15.   Unlike PPP loan applications, which were submitted directly to participating lenders, EIDL applications are submitted electronically to the SBA through servers in Colorado and processed by the agency with support from a government contractor, Rapid Finance. The

amount of an EIDL, if the application is approved, is determined based, in part, on the information provided in the application about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance are issued directly by the SBA. EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtains a loan under the Paycheck Protection Program, the EIDL funds cannot be used for the same purpose as the Paycheck Protection Program funds.

### Investigation to Date

16.  In October 2020, I initiated an investigation concerning LLOYD and SCHORT based on a review of documents received from financial institutions that indicated that LLOYD and SCHORT may have fraudulently obtained Paycheck Protection Program (PPP) loans from JP Morgan Chase Bank, Umpqua Bank, and U.S. Bank, as well as Economic Injury Disaster Loans ("EIDLs").

17.  A review of JP Morgan Chase bank records revealed that on April 7, 2020, LLOYD, doing business as Albany Home Care Services, 40394 Hilltop Drive, Lebanon, Oregon, 97355, received a PPP loan in the amount of $642,507. Proceeds from the loan were deposited into a JP Morgan Chase checking account in the name of LLOYD DBA Albany Home Care Services, account number ending in 0829. Included with the loan application package, which was submitted electronically, was an IRS form 944 listing 2019 wages in the amount of $3,084,046. Form 944 is the Employer's Annual Federal Tax Return that lists the amount of wages paid and taxes withheld from employee paychecks. The loan package also included the names of fifty-six Albany Home Care Services employees and the amount paid to each employee.

18.     A review of Umpqua Bank records revealed that on April 14, 2020, Keystone Pacific Management, Inc., 3714 Long Street, Sweet Home, Oregon 97386, received a PPP loan in the amount of $979,100. Umpqua Bank operated as the lending institution, and proceeds from the loan were disbursed to LLOYD'S USAA checking account ending in 9873. The President of Keystone Pacific Management was listed as LLOYD, home address 40394 Hilltop Drive, Lebanon, Oregon 97355. Included with the loan application package, which was submitted electronically, was an IRS form 944 listing 2019 wages in the amount of $4,701,168. The loan package included the names of sixty-four Keystone Pacific Management employees. The list included the same fifty-six employees in the same order that were listed in the Albany Home Care Services application plus eight additional names that were added at the bottom of the list.

19.     A review of U.S. Bank records revealed that on May 8, 2020, SCHORT, DBA Schort Lee Construction, 3714 Long Street, Sweet Home, Oregon 97386, received a PPP loan in the amount of $610,552. Proceeds from the loan were disbursed to a U.S. Bank business checking account ending in 0514 in the name of SCHORT, DBA Schort Lee Construction. Included with the loan application package, which was submitted electronically, was an IRS form 944 listing 2019 wages in the amount of $3,084,046, and a list of fifty-six employees and the amount paid to each employee. The total amount of earnings, the employee names, and the amount of earnings paid to each employee, was exactly the same as the list Albany Home Care Services PPP Loan Application submitted to JP Morgan Chase Bank.

20.     On May 11, 2020, three days after receiving the PPP loan proceeds, SCHORT transferred via wire $307,000 from his U.S. Bank account referenced above to a Pentagon Federal Credit Union account ending in 1890 in the name of Andrew LLOYD, 40394 Hilltop

Drive, Lebanon, OR 87355. Pentagon Federal Credit Union uses data servers for processing incoming wire transfers that are located in Ashburn, Virginia. After receiving the $307,000, LLOYD transferred funds to an E*TRADE account in his name and purchased securities.

21. Based on the fact that SCHORT submitted the same list of employees as Albany Home Care Services in order to qualify for the PPP loan, and that after receiving the loan he transferred roughly half of the loan proceeds to LLOYD, it is suspected that LLOYD assisted SCHORT in fraudulently obtaining the PPP loan in exchange for roughly half the proceeds.

22. A search of Oregon Secretary of State Corporate Records revealed that Albany Home Care services was established in Oregon on April 21, 2016, by LLOYD. The business activity was listed as "Assist individuals with daily needs at home." On October 23, 2019, a change in ownership form was filed naming Wendy Richardson as the Owner and the withdrawing Owner was listed as LLOYD. Based on this information, LLOYD was not the Owner of Albany Home Care Services at the time he applied for and received the PPP loan.

23. A search of Oregon Secretary of State Corporate Records revealed that Keystone Pacific Management, Inc., was incorporated in Oregon on June 26, 2018. The name of the Registered Agent and Incorporator was LLOYD, address 40394 Hilltop Drive, Lebanon, Oregon 97355. On August 20, 2019, an Amended Annual Report was filed naming LLOYD as the President and the corporate address listed as 3714 Long Street, Sweet Home OR 97386. The business activity was listed as "Investing in and managing real estate and property." On January 7, 2020, an Information Change form was filed listing Christopher Lloyd as the "new president." Based on this information, LLOYD was not the President of Keystone Pacific Management, Inc., at the time he submitted the loan application and listed himself as President and when he

received the PPP loan proceeds.

24. A search of Oregon Secretary of State Corporate Records revealed that Schort Lee Construction was established on January 22, 2020, by SCHORT, 835 Cook Street, Myrtle Creek, Oregon 97457. Based on the date that the company was established, Schort Lee Construction could not have paid $3,084,046 in wages in 2019 as represented in the loan application.

25. A search of databases containing information relating to property ownership, utilities, and individual addresses reported to credit agencies revealed that only eleven of the names listed as employees of Albany Home Care Services, Keystone Pacific Management, Inc., and Schort Lee Construction had someone with that same name in Oregon, and none resided in Albany or Lebanon, Oregon. Based on the fact the exact same names were listed as employees of all three companies, and database checks failed to identify a majority of the employees as residing in Oregon, I believe that the names listed as employees in all three of the above described PPP loan applications are fictitious.

26. Both LLOYD and SCHORT applied for the above-referenced PPP loans electronically, meaning they used a computer or otherwise internet connected device to transmit their applications and supporting documentation. A review of the applications shows both LLOYD and SCHORT electronically signed their applications.

27. The investigations also found that LLOYD applied for and obtained an EIDL loan in the name of Albany Home Care Services for approximately $150,000, which was funded on June 16, 2020.

28. A review of E*TRADE Securities LLC records reveals that account number ending in 1550 was opened by LLOYD, 40394 Hilltop Drive, Lebanon, Oregon 97355, on April

9, 2018. In 2020, LLOYD transferred the majority of the above-described PPP loan funds from his JP Morgan Chase and USAA Bank account to his E*TRADE Securities brokerage account ending in 1550. LLOYD also transferred the $307,000 wired into his Pentagon Federal Credit Union account to his E*TRADE account ending in 1550. The majority of the funds were used to purchase securities totaling $1,800,568.64.

29. The securities LLOYD purchased substantially increased in value. In November 2020, LLOYD transferred the funds and securities in his E*TRADE account to a Charles Schwab account ending in 2705 in the name of LLOYD. At the time of the transfer, the balance in the E*TRADE brokerage account was over $5 million.

30. In November 2020, LLOYD transferred the funds and securities from Charles Schwab account ending in 2705 into Charles Schwab account ending in 4724 in the name of LLOYD and NANCY ELLEN LLOYD.

31. As of November 30, 2020, records indicate that LLOYD had purchased, with proceeds of the fraud as well as a loan from Charles Schwab secured by equities purchased with proceeds of the fraud, 15,740 shares of Tesla, Inc. As of January 4, 2021, those shares have a value of $11,486,597.

32. Furthermore, I submit that an order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture.   The fraud proceeds have already been transferred between numerous accounts.   In my experience, these transfers can take place even when an administrative hold is on the accounts. This can make it difficult to track and ultimately leave the property unavailable for forfeiture.

/ / /

## CONCLUSION

33. Based on the foregoing, I have probable cause to believe, and I do believe, that ANDREW AARON LLOYD and RUSSELL A. SCHORT committed a violation of 18 U.S.C. § 1343, Wire Fraud, 18 U.S.C. § 1344, Bank Fraud, and 18 U.S.C. § 1957, Money Laundering. I therefore request that the Court issue a criminal complaint and arrest warrant for ANDREW AARON LLOYD and RUSSELL A. SCHORT.

34. Based on foregoing, I also have probable cause to believe, and I do believe, that the Charles Schwab account ending in 4724 contains property constituting or derived from proceeds obtained directly or indirectly as a result of violations of Title 18, U.S.C. §§ 1343, Wire Fraud and Title 18, U.S.C. §§ 1344, Bank Fraud, and is property involved in a violation of 18 U.S.C. § 1957 or traceable to such property and as such are subject to seizure pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f) and subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) & (C), 982(a)(1), 984, and 28 U.S.C. § 2461(c).

35. Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested arrest and seizure warrants were reviewed by Assistant United States Attorney (AUSA) Gavin Bruce, and AUSA Bruce advised me that in his opinion the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrants.

### **Request for Sealing**

36. It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint, arrest warrant, and seizure warrant. I believe that sealing these documents is necessary because any disclosure

of the information at this time may cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize the ongoing investigation. Premature disclosure of the affidavit, the criminal complaint, arrest warrant, and seizure warrant may adversely affect the integrity of the investigation.

/s/ Timothy Suttles, Per Rule 4.1
Timothy W. Suttles
Special Agent, FBI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  12:14 pm a.m/p.m. on  January 5, 2021 .

MUSTAFA T. KASUBHAI
United States Magistrate Judge