SCOTT ERIK ASPHAUG, OSB #833674
Acting United States Attorney
District of Oregon
**GAVIN W. BRUCE, OSB #113384**
Assistant United States Attorney
Gavin.Bruce@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 6:21-cr-00198-MC |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **ANDREW LLOYD,** | |
| **Defendant.** | |

Defendant Andrew Lloyd applied for nine PPP loans and numerous EIDLs, using multiple company names and identities, stealing over $3.5 million from COVID pandemic assistance programs that were intended to make ends meet for legitimate, struggling businesses. Defendant should receive a 65-month prison sentence to hold him accountable for his conduct.

/ / /

/ / /

**Government's Sentencing Memorandum**                                   **Page 1**

## FACTUAL BACKGROUND

A.   **The COVID-19 Pandemic and the Paycheck Protection Program**

In early 2020, the COVID-19 pandemic spread rapidly across our country and the world. The public-health crisis quickly set off a devastating economic crisis. Large parts of the economy were shut down, businesses shuttered, and workers lost their jobs. By April 2020, the unemployment rate in the United States had reached nearly 15%. Millions of businesses faced the risk of failing.

To respond to the economic fallout and prevent an even worse disaster, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act). One of the goals of the CARES Act was to help businesses make payroll and pay operating expenses, which would get much-needed cash into the hands of a struggling workforce. To that end, the CARES Act created a new government program, the Paycheck Protection Program (the PPP), to enable the issuance of loans, that ultimately could be forgivable, to small businesses in operation as of February 2020. The size of the PPP loan a particular business could receive was based, in part, on its average monthly payroll costs. Therefore, the more employees and payroll expenses, the larger the PPP loan.

Under the PPP, loans were processed and funded by participating lenders. The loans were guaranteed by the Small Business Administration (the SBA), and ultimately would be forgiven if borrowers spent the loan proceeds on permissible expenses, including spending a substantial percentage on payroll. To qualify for a PPP loan, a business was required to submit an application and supporting documentation that established, among other things, the number of persons employed by the business and the amount of the business' payroll expenses.

The CARES Act also expanded was the Economic Injury Disaster Loan (EIDL) Program. Under the EIDL Program, the SBA provides loans to small businesses experiencing a temporary loss of revenue due to the COVID-19 pandemic. Whereas financial institutions review PPP applications and fund PPP loans, the Small Business Administration itself administers and funds the EIDL Program. Applicants must provide certain business information, such as gross revenue, number of employees, much like the information reviewed for a PPP loan.

B.  Andrew Lloyd's PPP Fraud

Lloyd was an opportunistic fraudster. He learned about the significant government assistance programs and quickly went to work. Starting in April 2020, Lloyd began submitting EIDL and PPP loan applications to multiple financial institutions and the SBA. Lloyd used numerous business names to apply for the loans, as well as using the names and personal identifying information of his relatives and business associates—without their consent—to complete the applications. Lloyd applied for loans through entities such as Albany Home Care Services, Keystone Pacific, Intermountain Shipping, Hilltop Construction, Schort-Lee Construction, and Myrtle Creek Construction.

To complete the loan applications, Lloyd submitted false documentation to justify the amount of the loan requested. Many of the loans included an IRS form 944, which listed 2019 wages paid by the entities. The wages Lloyd claimed to have paid varied from $3 million to over $4.7 million. The loan applications also included a list of between 56 and 64 employees and the amount paid to each employee. In one PPP loan application for Keystone Pacific Management, Inc., Lloyd included a list of the same fifty-six employees, in the same order, that were listed in

the Albany Home Care Services application, plus eight additional names added at the bottom of the list.

The IRS form 944, the total amount of wages and earnings, the employee names, and the amount of wages paid to each employee, were all created by Lloyd and false.

Lloyd not only understood the ins and outs of the different CARES Act assistance programs, but he kept current on the different rounds of funding to ensure he would get paid. For example, in one PPP loan fraud, Lloyd took an active role in coordinating the application with a coconspirator. When the application was not originally accepted because the PPP program ran out of funds, Lloyd was quick to assure his coconspirator that the fraud would work in the end:

> From: ▮▮▮▮ Andrew Cell
> (owner)
> In May the congress should add more money to the program and there is a chance of it going thru of course the sooner the better

> From: ▮▮▮▮ Andrew Cell
> (owner)
> Ok they are adding another 300 billion very soon, hopefully it will go thru

In total, Lloyd submitted nine PPP loan applications, six of which were accepted, resulting in Lloyd receiving $3,489,352.34. Lloyd also applied for numerous EIDLs, of which SBA accepted one, resulting in payments to Lloyd of $160,000.

Because there were no employees or legitimate business expenses, Lloyd used the PPP funds for his own personal benefit. In doing so, he took one of two actions: he purchased real estate or invested in securities.

**Government's Sentencing Memorandum**                                                                                       **Page 4**

Lloyd transferred over $1.8 million of the PPP funds to his E*TRADE Securities brokerage account and purchased securities. Fortunately for the government, and for Mr. Lloyd's restitution obligation discussed below, the value of those securities increased exponentially. At the time the government seized Lloyd's brokerage account, he held 15,740 shares of Tesla, Inc., of which over 15,000 are traced back to proceeds of the fraud. Agents seized another account containing over $660,000 in securities and cash in March 2021. In total, as of the date of this sentencing memorandum, the securities and cash seized, all of which are proceeds of the fraud, total over $13 million.

In addition to securities, Lloyd purchased numerous residential rental properties with the proceeds of the fraud. In total, Lloyd purchased 25 properties in Oregon and California.

### C. The Charges, Plea Agreement, and Guideline Computations

Defendant was charged and plead guilty to an Information charging him with Bank Fraud, Money Laundering, and Aggravated Identity Theft.

Pursuant to the plea agreement, Defendant stipulates to restitution and forfeiture, discussed in more detail below. In addition, if Defendant demonstrates that he fully admits and accepts responsibility, the government will recommend a three-level reduction in Defendant's offense level.

The parties agree with the following PSR computations:

/ / /

/ / /

/ / /

/ / /

| Guideline Provision | Offense Levels |
|---|---|
| Base—<br>USSG § 2B1.1(a)(1) | 7 |
| Loss—<br>USSG § 2B1.1(b)(1)(G),<br>more than $3.5 and less than $9.5 million | +18 |
| Sophisticated Means—<br>USSG § 2B1.1(b)(10)(C) | +2 |
| Over $1 Million from Financial Institutions<br>USSG § 2B1.1(b)(17) | +2 |
| Section 1957 Conviction<br>USSG § 2S1.1(b)(2)(A) | +1 |
| **Total Offense Level** | 30 |
| Acceptance of Responsibility | -3 |
| **Total Adjusted Offense Level** | **27** |
| **Resulting Guideline Range** | **70-87 Months** |

The government also agrees to a three-level reduction under 18 U.S.C. 3553 as outlined in the plea agreement. This adjustment results in an offense level of 24 and guideline range of 51-63 months, in addition to the mandatory two-year term of imprisonment that is required to be served consecutive with any other term of imprisonment imposed upon defendant on Count 3, Aggravated Identity Theft.

## ARGUMENT

### A. Government's Recommended Sentence

The fraud perpetrated by Andrew Lloyd in only a 60-day period is stunning. He submitted over a dozen applications for pandemic assistance, using different identities, fake tax forms, and bogus payrolls. He laundered his money quickly from his bank to his brokerage accounts and invested in highly speculative securities. He laundered the other money into properties – over 20 of them – which he purchased not only in his name, but under the auspices

of other individuals and even in the name of different trusts.  All the while, real businesses and real workers struggled to obtain pandemic assistance and keep afloat.  A sentence of 65 months in prison adequately accounts for the breadth of Llyod's fraud.

In 2020, as the COVID-19 pandemic spread across the country causing death and economic distress, the government created PPP loans to help small businesses whose livelihoods were jeopardized.  But PPP funds were not unlimited, and misdirecting emergency assistance from small businesses who need it to stay afloat harmed innumerable businesses and workers.  Because Lloyd was not eligible for a PPP loan.  He was not eligible from the EIDL program.  Yet he took advantage of these programs by submitting false application after false application, claiming to have employees and payroll that did not exist.

It is true that Lloyd's speculative day-trading was successful.  To that end, the government has sought approval from MLARS to apply the forfeited funds to Lloyd's substantial restitution obligation.  Yet his lucky day-trading does not mitigate his culpability.  Lloyd did not return these funds voluntarily; law enforcement recovered the funds before he could spend them or lose them.  The seriousness of the offense is not diminished by sheer dumb luck.

A substantial term of imprisonment is warranted.  People who seek to defraud these programs make it more difficult for administrators of the relief programs to get aid to individuals who qualify for and need it.  A significant sentence of 65 months in prison should serve as a warning and deterrent to others inclined to exploit these and future pandemic relief programs.

/ / /

/ / /

/ / /

**B.     Restitution and Forfeiture**

The parties agree that restitution should be made to the financial institutions listed in the PSR, totaling $3,783,904.30, and to the Small Business Administration in an amount totaling $270,967.97.

Defendant also agrees to the entry of a Final Order of Forfeiture. This Order includes forfeiture of 25 properties and over 15,000 shares of Tesla, Inc. stock.

## CONCLUSION

Based on the foregoing, the government recommends that this Court impose a concurrent 41-month prison sentence on Counts 1 and 2, to be run consecutive to the 24-month mandatory minimum on Count 3, for a total of 65 months' prison, and restitution as outlined above.

Dated: October 20, 2021

Respectfully submitted,

SCOTT ERIK ASPHAUG
Acting United States Attorney

s/ *Gavin W. Bruce*
GAVIN W. BRUCE, OSB #113384
Assistant United States Attorney